# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 15, 2004

## STATE OF TENNESSEE v. JASON BRIAN HARGROVE

**Appeal from the Circuit Court for Marshall County**
**No.15505   Charles Lee, Judge**

---

### No. M2003-00333-CCA-R3-PC - Filed May 5, 2005

---

The petitioner, Jason Brian Hargrove, pled guilty to multiple counts of theft and burglary and was ordered to serve an effective sentence of twenty (20) years.  This Court affirmed his sentence on direct appeal.  See State v. Jason Brian Hargrove, No. M2001-01579-CCA-R3-CD, 2002 WL 1585638 (Tenn. Crim. App., at Nashville, July 18, 2002).  The petitioner filed a timely petition for post-conviction relief, alleging ineffective assistance of counsel at trial and arguing that his guilty plea was not knowingly and voluntarily entered.  After a hearing, the post-conviction court denied the petition.  On appeal, the petitioner challenges the denial of the petition for post-conviction relief based on a claim of ineffective assistance of counsel.  He also argues that the holding in Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), requires a reduction in his sentence.  For the following reasons, we affirm the decision of the post-conviction court and decline to modify the petitioner's sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Merrilyn Feirman, Assistant Public Defender, Nashville, Tennessee, for the appellant, Jason Brian Hargrove.

Paul G. Summers, Attorney General & Reporter; Michelle Chapman McIntire, Assistant Attorney General; Mike McCowen, District Attorney General and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

The facts underlying the petitioner's convictions were summarized by this Court on direct appeal as follows:

Between midnight and 7:00 a.m. on February 27, 2001, the [petitioner], along with two other individuals, burglarized eighteen vehicles and stole numerous items of personal property from the vehicles. They also stole three vehicles, two of which they drove to a muddy field and abandoned after the vehicles became stuck in the mud. The three men were apprehended when they returned to the field to retrieve the abandoned vehicles. The police officer who arrested the men noticed that "all three defendants had an excessive amount of mud on them and that the field was muddy." Moreover, the officer observed that the trio was in possession of some of the property that was earlier stolen from the other vehicles.

As a result, on April 25, 2001, the [petitioner] pled guilty to three counts of theft of property valued between $1,000 and $10,000, a Class D felony; two counts of theft of property valued between $500 and $1,000, a Class E felony; eighteen counts of automobile burglary, a Class E felony; and twelve counts of theft of property valued less than $500, a Class A misdemeanor. The parties stipulated that the [petitioner] is a Range II multiple offender.

In sentencing the [petitioner], the trial court found no mitigating factors. However, the court concluded that four enhancement factors applied to the [petitioner]: (1) the [petitioner] has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (8) the [petitioner] has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (13) the instant felony was committed while on community corrections; and (20) the [petitioner] was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. After considering these factors, the trial court sentenced the [petitioner] to six years incarceration for each Class D felony conviction, two years for each Class E felony conviction, and eleven months and twenty-nine days for each Class A misdemeanor conviction. The trial court further ordered that the Class D felony sentences be served consecutively to each other, the Class E felony sentences be served concurrently with each other but consecutively to the Class D felony sentences, and the Class A misdemeanor sentences be served

-2-

concurrently with each other and concurrently with the Class E felony sentences for a total effective sentence of twenty years incarceration.

State v. Jason Brian Hargrove, 2002 WL 1585638, at *1. The petitioner appealed his sentence to this Court. On direct appeal, this Court affirmed the petitioner's sentence. Id. at *4.

Subsequently, the petitioner filed a pro se petition for post-conviction relief, alleging various instances which, he argued, amounted to ineffective assistance of counsel. The petitioner also argued that his guilty plea was not knowingly and voluntarily entered. The post-conviction court appointed counsel and held an evidentiary hearing on the petition.

## Proof at the Post-Conviction Hearing

The petitioner testified that, while his case was still in general sessions court, trial counsel met with him a "couple of times" in the courtroom. According to the petitioner, trial counsel assured him that the trial court would run his sentences concurrently so that he would only have to serve a total of eight (8) years in confinement. After the petitioner's case was transferred to circuit court, the petitioner testified that trial counsel met with the petitioner less than five times for approximately fifteen (15) to twenty (20) minutes on each occasion. During one of these meetings, the petitioner claims that trial counsel went over the charges with him and told him that he would receive an eight (8) year sentence "by law."

The petitioner also testified that trial counsel did not convey a plea offer to him, but the petitioner admitted that trial counsel told him if he entered an open plea he would receive an eight (8) year sentence. The petitioner also claimed that trial counsel told him it would be a waste of time to proceed to trial because he would receive an eight (8) year sentence regardless of whether he pled guilty or was convicted at trial. According to the petitioner, trial counsel informed him that he would go to boot camp and that he would be released in six (6) months, regardless of his sentence. The petitioner stated that if he had known he would receive a twenty-year sentence, he would not have pled guilty. However, the petitioner admitted that trial counsel explained to him that it was the trial court's decision whether to run the sentences consecutively or concurrently.

The petitioner also claimed that he informed trial counsel about his first suicide attempt during one of their meetings at the jail and that trial counsel even saw the bandages on his wrists. Further, the petitioner claimed that he was admitted to a mental health facility after his second suicide attempt. The petitioner claimed he notified trial counsel of the second suicide attempt and the fact that he was undergoing mental health treatment. The petitioner testified that he told trial counsel that he was taking anti-depressants.

The petitioner testified that he told trial counsel that his mother died approximately two (2) months prior to the offenses in question and that trial counsel was supposed to bring this piece of information to the court's attention, but failed to do so. On cross-examination, the petitioner admitted that he had been committing crimes long before his mother died.

The petitioner stated that he was unaware that trial counsel knew any of the victims until the sentencing hearing. The petitioner stated that, had he known that trial counsel was acquainted with some of the victims, he would have asked for new counsel.

Trial counsel for the petitioner testified that he had been practicing law since 1992 and that he devoted approximately fifteen (15%) to twenty-five (25%) percent of his practice to criminal defense work. Trial counsel was appointed to represent the petitioner while the case was in general sessions court and he continued to represent the petitioner through his direct appeal. Trial counsel recalled meeting with the petitioner at least once before his case was bound over to the grand jury and approximately three times while the petitioner was housed in the Marshall County Jail prior to his plea. Trial counsel testified that he filed a motion for discovery and met with the District Attorney assigned to the petitioner's case.

Trial counsel stated that he conveyed the State's offer of settlement to the petitioner as soon as he received it. He explained to the petitioner that the State's offer would require the petitioner to enter an open plea to the indictment, but that the State was going to dismiss sixteen (16) of the fifty (50) counts in exchange for the plea. Trial counsel remembered telling the petitioner that an open plea was a guilty plea. Trial counsel testified that he explained to the petitioner the possible range of punishment that he could receive for each count of the indictment and that some of the offenses could be merged together. Trial counsel specifically denied telling the petitioner that he was going to go to boot camp if he pled guilty. Specifically, trial counsel recalled that the petitioner "was accused of committing these offenses while he was on some form of probation" and, because of that, he was "not eligible for a second shot at boot camp."

Trial counsel also testified that he "never" promises anything to a client regarding a sentence. Specifically, he denied promising the petitioner that he would receive an eight (8) year sentence as part of the plea agreement. Further, he recalled going through the consecutive sentencing statute with the petitioner and explaining the reasons that the court could choose to run the sentences consecutively. Trial counsel also remembered explaining to the petitioner that it was within the trial court's discretion whether to run the sentences consecutively or concurrently. Trial counsel remembered that, despite his efforts to explain the sentences to the petitioner, during the plea colloquy, the petitioner indicated that he thought that the sentences would run concurrently. At that time, both the trial court and trial counsel explained to the petitioner that the trial court was responsible for making that determination. The petitioner then indicated that he understood that the manner of service of his sentence was to be determined by the trial court.

Trial counsel admitted that at some point during the proceedings he discovered that he knew three of the petitioner's victims. He opined that he realized he knew the victims as soon as he read the indictment. He explained his relationship with the victims during the hearing. Trial counsel testified that he ate breakfast at a local diner and that victim Ken Adcock was often there. Trial counsel explained that there were several large tables at the diner where groups of men ate breakfast together, where some of the men knew each other and some did not. Trial counsel denied having any type of social or business relationship with Mr. Adcock. Trial counsel also stated that he knew

victim Charlie Whitworth because he played golf with Mr. Whitworth on at least two occasions during a group golf trip where approximately twenty-eight (28) people went to play golf out-of-state. Trial counsel also admitted that he was distantly related to victim Margaret Tyree by marriage. Trial counsel again stated that he had no type of business or personal relationship with any of the victims and stated that he informed the petitioner of his interactions with the victims not long after he read the indictment. Trial counsel claimed that his knowledge of the victims did not affect his representation of the petitioner.

Trial counsel also testified that he was not aware that the petitioner had attempted suicide while in the county jail. Further, he felt that the petitioner was mentally competent to assist with his defense. Trial counsel stated that he was also unaware that the petitioner's mother had died or that the petitioner was taking any medication.

After listening to the evidence, the post-conviction court dismissed the petition for post-conviction relief, making the following findings of fact and conclusions of law:

> Now, there are basically - - there are several facts that are in dispute. Among those are whether or not the defendant was promised by his lawyer of a certain outcome in the proceeding if only he would enter a plea of guilty and submit himself to a hearing.
>
> The Court makes the specific finding of fact that no promises were made to the defendant by his counsel of record at the time.
>
> . . . .
>
> The defendant alleges that there was some conflict of interest between trial counsel and some of the victims in this matter.
>
> There is no proof that there was any conflict of interest or relationship between trial counsel and any of the victims in this matter that would have caused him to question whether he should proceed further with his representation of the defendant.
>
> Along those lines, this is a small community, and when - - I believe there was - - I don't recall the specific number. There were quite a number of victims in this case. I know there were at least 18 or 19 potential separate people in here, if I am not going to know some of those people. I would be very surprised if anybody who lived in this county wouldn't know some of those people.
>
> The fact that you may on occasion eat in proximity in the same restaurant certainly does not establish any special relationship, and I am aware of the

-5-

description which [post-conviction counsel] gave of the activities at Helen's Breakfus Shop. There is just no conflict that has been established.

In addition to that, the defendant has the burden of proving that there may have been a different outcome. Even if there had been some proof in mitigation offered by the Court in the sentencing hearing concerning the defendant's mother's death, that would have had no outcome - - that would not have been found to be a mitigating factor, and would have had no effect upon the outcome of the judgment of the court as to the length or how those cases should have been run.

The State has aptly pointed out in this hearing, as it would have at that hearing, that apparently the relationship of the defendant to his mother has not been directly correlated to his criminal activity.

So in short, the Court finds that the defendant has failed to carry his burden of proof that his counsel is ineffective in not pursuing and presenting any mental health deficiencies that would have affected his plea or presenting any proof regarding mitigation in that area. There was no conflict of interest.

And the defendant has failed to prove that there was any promises [sic] made to him which caused him to enter his plea of guilty.

The Court finds that counsel for the defense has performed above those standards which one would normally expect and is outlined in the case of Baxter versus Rose. And consequently, the defendant's petition must fail.

The petitioner filed a timely notice of appeal. On appeal, he challenges the post-conviction court's dismissal of the petition for post-conviction relief and argues that his guilty plea was not knowingly and voluntarily entered because of ineffective assistance of counsel. He also argues that the holding in Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), requires a reduction in his sentence.

## Analysis

### Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960

S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W .2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that trial counsel was ineffective for the following reasons: (1) trial counsel failed to inform the petitioner that he was acquainted with some of the victims; (2) trial counsel failed to inform the court that the petitioner had mental health issues; and (3) trial counsel failed to inform the petitioner of the consequences of his guilty plea, making the plea invalid.

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland v. Washington, 466 U.S. 668, 694, 687 (1984), the petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the State standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. Boykin, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

The transcript from the guilty plea hearing herein reveals that the trial court carefully and correctly informed the petitioner regarding his constitutional rights, and specifically asked if he understood that he was waiving those rights by pleading guilty. The petitioner responded in the affirmative. Further, he stated that he understood the plea agreement and the significance of the guilty plea hearing, and was entering his guilty plea voluntarily. The only misunderstanding expressed by the petitioner at the guilty plea hearing involved the difference between concurrent and consecutive sentencing. When the petitioner expressed his misunderstanding between the terms, both trial counsel and the trial court took the time to explain the difference to the petitioner. The trial court made it clear to the petitioner that he was pleading guilty to the open indictment and that the sentence would be determined by the trial court at a later date. The trial court also explained the possibility that the sentences could run either concurrently or consecutively. The petitioner indicated his understanding of the situation before agreeing to plead guilty. Accordingly, we determine that the petitioner's guilty plea was knowing and voluntary.

The petitioner claims that trial counsel was ineffective because he failed to inform the petitioner that he was acquainted with some of the victims, promised the petitioner an eight-year sentence, and failed to notify the trial court of his mental health issues. The record does not preponderate against the finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions was that the court accredited the testimony of trial counsel rather than that of the petitioner. As stated previously, credibility determinations are entrusted to the trial court. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The post-conviction court accepted as true the testimony of trial counsel concerning the circumstances of the plea and the conversations leading up to that decision, including the fact that trial counsel did not promise that the petitioner would receive a particular sentence as a result of his plea, was not aware of any mental health problems of the petitioner and notified the petitioner that he was acquainted with several of the victims. At the hearing, the petitioner failed to show that trial counsel did not notify him that counsel knew several of the victims. The testimony of trial counsel was in direct conflict with that of the petitioner in this regard and was accredited by the trial court. Moreover, the trial counsel testified that he was unaware that the petitioner had any mental health issues that would have warranted mentioning to the trial court. The record not only supports the determination of the post-conviction court, but the petitioner has also failed to establish that he suffered any prejudice as a result of trial counsel's representation and failed to show that there was a reasonable probability that but for trial counsel's errors he would not have pleaded guilty but would have gone to trial. This issue is without merit.

Application of Blakely v. Washington

Next, the petitioner contends that the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), requires a reduction in his sentence because the trial court, rather than a jury, utilized statutory enhancement factors to increase his sentence beyond the presumptive minimum. Further, the petitioner argues that Blakey prohibits the imposition of consecutive sentences by the trial court. The State argues that the petitioner has waived this argument by failing to raise the claim in his post-conviction petition or on direct appeal. Further, the State argues that Blakely does not apply to cases on collateral attack and is not subject to retroactive application.

Subsequent to the submission of this case to the court for consideration the Tennessee Supreme Court decided that Blakely does not affect the Tennessee sentencing procedures at all. See State v. Edwin Gomez, ___ S. W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848 (Tenn. Apr. 15, 2005) (Interpreting Booker v. U. S., ___ U.S. ___, 125 S.Ct. 738 (2005). This issue is therefore without merit.

-9-

## Conclusion

For the reasons stated above, the judgment of the lower court is affirmed.


_____
JERRY L. SMITH, JUDGE